# Richmond

## CONSOLVO & CHESHIRE, A PARTNERSHIP, V. HOMES CORPORATION.

### March 22, 1923.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Roper, Bowden, Cochran & Sands,* for the plaintiff in error.

*Tazewell Taylor,* for the defendant in error.

WEST, J., delivered the opinion of the court.

Homes Corporation brought action against Consolvo & Cheshire, a partnership, on a subscription to its capital stock, made before the organization of the corporation, and recovered a judgment for $5,000.00, the amount of the subscription, with interest. To that judgment this writ of error was granted.

The assignments of error relied on by the plaintiff in error in this case are identical with those relied on by the plaintiff in error in the case of *Watters & Martin, Incorporated,* in which an opinion was handed down to-day, affirming the judgment of the trial court, *ante*

p. 114, 116 S. E. 366. But in this case no question of ratification of the subscription contract is involved.

For the reasons given in the opinion in that case, except upon the question of ratification, the judgment in the instant case will be affirmed.

*Affirmed.*

Sims and Burks, J. J., dissenting.

We concur in the majority opinion on the subject of the blue sky law (Laws 1918, C. 408), but we feel constrained to dissent from the holding of the majority opinion that there was no material variance between the prospectus, on the faith of the representations of which the stock subscription contract of the defendants was obtained, and the charter of the corporation afterwards obtained.

We think that when the prospectus is read in the light of the surrounding circumstances existing at the time it was presented to the defendants and they entered into the stock subscription contract it plainly expresses to the defendants the representation that the prime object of forming the corporation was to promote and sustain the growth of the city of Norfolk in the manner and by the means set out in the prospectus. To accomplish this end there was no objection to giving the corporation the most extensive powers needed. The growth of Norfolk was the principal end in view by those who subscribed to the prospectus, and the powers to accomplish this end were mere incidents; whereas the charter makes the chief end the powers conferred, and contains no provision which requires the business of the corporation to be so located as to assure even that the growth of the city will be so much as an incident to the business of the corporation.

The broad statement in the clause of the prospectus, that the corporation would be organized for "the purpose of engaging in the real estate and building business," is under the heading of *"Organization,"* and seems to us to do nothing more than state the general character of the business for the conduct of which the corporation was proposed to be chartered, and it seems manifest that such general statement is qualified and limited—that is, restricted—in its meaning by what immediately follows in the prospectus, under the heading of *"Object."* Under the latter heading the proposed powers of the contemplated corporation are stated in four paragraphs; and while such powers as there stated are very broad and varied, they are all inseparably linked together, and are stated as being all to be obtained "to this end," that is to say, in order to accomplish the aforesaid chief object, viz.: "To encourage building improvements of a character and in a manner to preserve the present growth of the city of Norfolk. The charter, however, sets the corporation absolutely free from all obligation to conduct any business having for its object the preservation of the growth of the city of Norfolk, and contains no provision whatever which in any way limits the *locus* or scope of the business operations of the corporation so as to connect the same in any manner with the aforesaid chief object for which the prospectus says the proposed corporation was to be chartered. Under the charter the business of the corporation is not required to be located within a thousand miles of Norfolk, or in any particular place, and its chief and, indeed, sole object and purpose is allowed to be the preservation of the growth of any place other than of Norfolk, although such place may be a rival and competitor of, and its growth detrimental to, the city of Norfolk. So that we can but conclude that there

is a material variance between the prospectus and the charter, which, under all of the authorities on the subject, released the defendant company from its stock subscription contract which was entered into upon the faith of the representations contained in the prospectus.